12-2360-cv
GEA Group AG v. Panda Ethanol, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 28th day of December, two thousand twelve.

PRESENT:  ROBERT D. SACK,
          DENNY CHIN,
          RAYMOND J. LOHIER, JR.,
                   Circuit Judges.

- - - - - - - - - - - - - - - - - - - -x

GEA GROUP AG,

                    Plaintiff-Appellant,


                    -v.-                              12-2360-cv

PANDA ETHANOL, INC.,
                    Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:      Michael D. Blechman, Michael A. Lynn, Kaye Scholer LLP, New York, NY and Steven S. Rosenthal, Kaye Scholer LLP, Washington, DC.

FOR DEFENDANT-APPELLEE:       Jonathan D. Pressment, Sarah Jacobson, Haynes and Boone, LLP, New York, N.Y.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant GEA Group AG ("GEA") appeals from a May 29, 2012 judgment dismissing its breach of contract claim against Panda Ethanol, Inc. ("PEI"). GEA's complaint alleged that PEI failed to make capital contributions to its wholly owned subsidiary, Panda Hereford Ethanol, L.P. ("PHE"), as required by a Sponsor Support Agreement ("SSA") among PEI, PHE, and a syndicate of lenders (the "Lenders") who were financing PHE's project to construct an ethanol plant in Texas.

Pursuant to the SSA, PEI agreed to contribute sufficient capital to PHE to enable it to maintain a $1 million contingency at all times, as required by an amended financing agreement between PHE and the Lenders (the "Second Amendment"). The SSA expressly stated that it was "a condition precedent to the effectiveness of the Second Amendment and a material inducement for the Lenders to agree thereto." (SSA at 2). PHE subsequently went bankrupt, and GEA purchased from PHE's successor, inter alia, any right of action held by PHE against PEI relating to the construction project.

The district court granted PEI's motion to dismiss, concluding that because PHE obtained no rights against PEI under the SSA, GEA could not have purchased any right to sue PEI under the SSA.

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6), accepting all factual allegations in the complaint as true, and drawing all reasonable

-2-

inferences in plaintiff's favor.  Forest Park Pictures v.
Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir.
2012).  "To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (citation and internal quotation marks
omitted).  We assume the parties' familiarity with the underlying
facts, the procedural history of the case, and the issues
presented for review.

Under New York law, which governs the SSA, "[t]he
fundamental, neutral precept of contract interpretation is that
agreements are construed in accord with the parties' intent."
Northwestern Mut. Life Ins. Co. v. Delta Air Lines, Inc. (In re
Delta Air Lines, Inc.), 608 F.3d 139, 146 (2d Cir. 2010) (quoting
Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002))
(internal quotation marks omitted).  "[W]hen parties set down
their agreement in a clear, complete document, their writing
should . . . be enforced according to its terms."  Vt. Teddy Bear
Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004) (quoting
W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (1990))
(internal quotation marks omitted).  "Such agreements should be
read as a whole to ensure that undue emphasis is not placed upon
particular words and phrases."  Bailey v. Fish & Neave, 8 N.Y.3d
523, 528 (2007) (citations omitted).

Here, we conclude that the intent of the parties is
discernible from the face of the SSA.  Read as a whole, it is
clear that the SSA was entered into as a promise by PEI to the

Lenders to ensure that PHE would comply with its obligations under the Second Amendment. The SSA expressly stated that its execution and delivery was a "condition precedent to the effectiveness of the Second Amendment and a material inducement for the Lenders to agree thereto." (SSA at 2). The SSA also provided that PEI would "cause [PHE] to comply" with the requirement set forth in the Second Agreement that PHE maintain a $1 million contingency. (SSA § 2.1). Far from constituting a promise from PEI to PHE, these provisions, read together, demonstrate as a matter of law that PEI was promising the Lenders as a condition precedent to their further financing that it would cause its subsidiary, PHE, to comply with its contingency obligations. Drawing all reasonable inferences in GEA's favor, it is simply not plausible that the SSA conferred upon PHE the right to sue its parent company, PEI. Thus, like the district court, we conclude that GEA failed to state a contract claim because PHE could not have conveyed any right to sue PEI under the SSA.

We have considered GEA's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

-4-